A. Holmes RICHARDS, Plaintiff in Error,

v.

AMERICAN SECURITY LIFE INSUR-
ANCE COMPANY, a corporation, De-
fendant in Error,

No. 37260.

Supreme Court of Oklahoma.

Nov. 20, 1956.

Bryan Billings, Woodward, for plaintiff
in error.

William R. Burkett, Woodward, for de-
fendant in error.

PER CURIAM.

This action was brought by the plaintiff in error to recover the amount of the payments authorized under the terms of a hospitalization insurance policy issued him by the defendant in error. Liability was denied by the defendant in error who relied on the following policy provision: "* * * hospital confinement * * * resulting from sickness the cause of which originates while this policy is in force and more than fifteen days after the date hereof," it being the defendant in error's position that the cause of the sickness did not originate while the policy was in force. The policy was issued June 25, 1953.

A doctor testifying for the plaintiff in error stated that in January, 1952, he operated to remove a cataract from the right eye of the plaintiff in error; that he had examined him in November 1951, and again in January and April 1952, and that there was no cataract on the patient's eye at that time although the vision of the left eye was only 20/30 due to sclerosis of the lens; that the patient gave a history of difficulty in reading with his left eye; that in September 1954, he examined the plaintiff in error once more and discovered a cataract on the left eye which he removed in November 1954; that none of the examinations prior to September 1954, disclosed a need for hospitalization because of the condition of the patient's left eye.

Another doctor, testifying for the defendant in error, stated that from his examination of the plaintiff in error in December 1952, it was his opinion that the man had an incipient cataract; that when he first examined him in September 1950, his vision in the left eye was 20/25 but that on the subsequent examination it had deteriorated to 20/25-2 or 20/30; that "he would hate to say definitely" that the patient had a senile cataract on the left eye at that time but that a cataract was developing; that "there is practically no difference between a sclerosed lens and a cataracted lens, only just in the degree of maturity. A beginning cataract and a sclerosed lens

are practically the same thing. I don't know how you would differentiate"; that the loss of vision in the left eye was attributable to this condition and was such as to be noticeable to the patient; that "you can tell when they are started, yes, but you never know when they are going to start;" that the progress of a cataract is not always the same but that he reasonably expected this one would develop and require surgery; that no surgery or hospitalization was needed in December 1952.

The jury returned a verdict for the defendant. The plaintiff in error insists that his motion for a directed verdict should have been sustained on the theory that the evidence failed to disclose that the disease had become manifest or active "as a cause of hospital confinement" prior to 15 days from the date of the policy.

In the case of Reserve Life Ins. Co. v. Lyle, Okl.Sup., 288 P.2d 717, 718, a policy provision almost identical to that involved herein was considered. The syllabus of the Lyle case stated the rule as follows:

"In an insurance policy of express terms covering expense of hospital confinement 'resulting from sickness the cause of which originates while this policy is in force,' the sickness is deemed to have its inception when the sickness first becomes manifest or active as the cause of the hospital confinement, and not at an earlier time when the medical cause of the sickness may have had its origin."

In that case it was urged that a pre-existing arterio-sclerotic condition that might have caused the insured's heart attack came within the terms of the policy exemption. There had been no previous manifestation of the heart trouble, and this court held that the exemption did not apply. Previously, in the case of Mutual Benefit Health & Accident Ass'n v. Ramage, 293 Ky. 586, 169 S.W.2d 624, from which we cited with approval in American Ins. Co. of Texas v. Brown, 203 Okl. 407, 222 P.2d 757, 759, it was stated that "the disease originates when it becomes active or there exists a

distinct symptom or condition from which one learned in medicine can with reasonable accuracy diagnose the disease. * * *" In the Brown case the insured's illness was a functional nervous condition that might have antedated the policy but had not caused any ill effects until nearly a year after the date of the policy. There too recovery was allowed. However, in no case cited to us or discovered by us has a recovery by a directed verdict been permitted where there was a conflict in the medical testimony in which one of the medical witnesses had diagnosed the specific disease from its symptoms at a time prior to the policy date. A motion for a directed verdict is not authorized where there is any evidence or reasonable inferences therefrom which would tend to support a verdict for the party against whom it is directed. In the instant case, considering the defendant in error's medical testimony in the light most favorable to it, we cannot say that there was no evidence upon which reasonable men might differ as to whether the cataract in the insured's left eye had manifest itself prior to the policy date by a distinct symptom or condition from which one learned in medicine could with reasonable accuracy diagnose the specific ailment which was thereafter the cause of the hospital confinement. Thus, it was not error to overrule the motion for a directed verdict.

The plaintiff in error also complains of the instructions. His specific complaint is directed to instruction No. 4 given by the court. This instruction is substantially the same as the plaintiff in error's own requested instruction No. 4 which was the only one of his five requested instructions that was not given exactly as tendered to the court. This instruction merely pointed out that the only material question of fact unresolved by the parties' admissions was the question of when the illness first manifest itself. After quoting the policy provision, the court continued: "* * * the sole question for you to decide is, did the cause of the sickness * * * arise * * *" before the policy date. This phrase was thereafter adequately explained by the court's instruction No. 6 in which it was pointed out that "it speaks of an active state of illness * * * which manifests itself as *the cause of the* hospital *confinement.*" (Emphasis supplied.) This is the exact language used in the Lyle case. If the plaintiff in error desired additional instructions on this point he should have requested them, for those given substantially covered the matter and were not prejudicial.

The judgment is affirmed.

JOHNSON, C. J., WILLIAMS, V. C. J., and CORN, DAVISON, HALLEY, BLACKBIRD, JACKSON and CARLILE, JJ., concur.

The court acknowledges the aid of the Supreme Court Commissioners in the preparation of this opinion. After a tentative opinion was written by Commissioner James H. Nease, and approved by Jean R. Reed and J. W. Crawford, the cause was assigned to a Justice of this Court for examination and report to the Court. Thereafter, upon report and consideration in conference, the foregoing opinion was adopted by the Court.